UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MALCOLM GREER,

Plaintiff,

vs.

**COMPLAINT**

VILLAGE OF SCARSDALE, POLICE CHIEF ANDREW MATTURRO,

Defendants.

---------------------------------------------------------------x

By and through his counsel, Michael H. Sussman, Esq., plaintiff hereby alleges as and for his claims against defendants:

I. **PARTIES**

1. Plaintiff Malcolm Greer [hereinafter either "Greer" of "plaintiff"] is an African American of legal age who resides in the County of Westchester and remains employed by the Village of Scarsdale [hereinafter "the Village"] as a police officer.

2. Defendant Village is an incorporated municipality organized pursuant to the laws of the State of New York. It may sue and be sued and has delegated final policy-making decision for police personnel practices like those challenged herein to defendant Police Chief Andrew Matturro [hereinafter "the Chief" or "Matturro"].

3. Defendant Matturro is the duly appointed Police Chief for the Village, resides and works in the County of Westchester and may sue and be sued. In all regards, the acts and omissions undertaken by defendant Matturro were engaged in while he was acting under color of law.

II. **JURISDICTION**

4. As plaintiff contends that defendants intentionally violated his right to equal protection as provided by the Fourteenth Amendment to the United States Constitution on account of his race, this Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. secs. 1983 and 1988 and 28 U.S.C. secs. 1331 and 1343(a)(3) & (4).

III. **FACTUAL AVERMENTS**

5. Plaintiff has a BA and a master's degree in Management and Policy from The State University of New York at Stony Brook.

6. Plaintiff worked for Northrop Grumman Corporation in several roles for approximately 10 years, and last served as a project manager at the company before leaving to become a police officer.

7. Plaintiff worked as a police officer for the Village for nine years.

8. In 2022, of the 45 members of the Police Department, plaintiff and one other detective are the only African American sworn officers.

9. During and throughout Greer's employment, defendant Chief and those reporting to him have systematically denied plaintiff the same training opportunities as they provided similarly situated white police officers like Officer Bell who, though with the department half as long as plaintiff, has been sent for much more extensive training than was PO Greer.

10. Indeed, plaintiff received almost no training though he was better educated than almost all of the Caucasian officers and highly motivated to obtain and succeed at such training.

11. Examples of the training and provided Caucasian officers include, but are not limited to, Breath Test Operator, Defensive Tactics, Rapid Deployment, Taser Instructor, Bicycle Officer, Motorcycle Officer, Dare Instructor/Youth Officer, Field Training Officer and Post 4 Village officer.

12. In a promotional examination for the position of sergeant which he took in June 2021, plaintiff placed number 1 on the list.

13. Effective October 28, 2021, defendant Village appointed plaintiff to the rank of sergeant.

14. However, during a meeting on October 15, 2021 at which he advised plaintiff of this promotion, defendant Matturro told plaintiff that people in the department did not like him and repeatedly made hypothetical statements starting with the words "If you make probation…".

15. Plaintiff found this formulation troubling because he knew that during his years in the department, no promoted officer had ever failed probation.

16. Following his promotion to the rank of Sergeant, plaintiff fully and properly discharged his assigned duties despite the fact that he was assigned to supervise the most junior officers in the departments, many of whom demonstrated significant performance-related issues.

17. Upon an officer's promotion to the rank of Sergeant, the department typically assigned a current supervisor to help transition the promotee into this role.

18. Defendants assigned Sgt. Siciliano to work with plaintiff three days/week, but this sergeant had no interest in training plaintiff, told him to engage in self-study, explained his belief that plaintiff already should know what he needed to know and spent no time training plaintiff.

19. Likewise, plaintiff had no sit-down sessions with his superior, the Patrol Lieutenant, or anyone else in senior leadership.

20. After his promotion, defendants provided plaintiff with a single positive performance review.

21. Following his promotion and continuing through July 2022, defendant Chief and his delegees systematically refused to support plaintiff's exercise of

supervision over the Caucasian officers to whom he was assigned, including POs Bell, Sordellini, and Saglibene.

22. Indeed, when plaintiff sought to exercise such supervision over these Caucasian subordinates, defendant Chief and his delegees uncustomarily and intentionally undermined Greer and supported the untoward and inappropriate conduct of his subordinates.

23. Specifically, plaintiff sought to counsel, or have Bell's sergeant, Siciliano, counsel and, as needed, discipline Officer Bell for her failure to discharge duties, her ongoing fraternization with this male detective during work hours, her leaving patrol unattended to socialize with a male detective and her taking double lunch to do the same.

24. When Sgt. Siciliano refused to take any appropriate supervisory action, plaintiff spoke with his supervisor, Lt. Delbene, about PO Bell's conduct, including her direct insubordination to him.

25. Lt. Delbene responded that the plaintiff was being investigated and took no action against PO Bell.

26. Plaintiff's superordinates, including defendant Chief, baselessly failed to support plaintiff's proper exercise of supervisory authority.

27. This lack of support emboldened Caucasian officers, who were uncomfortable being supervised by plaintiff as an African American, to challenge his authority and baselessly complain about him.

28. Not a single one of these complaints was accurate or warranted, but defendant Matturro used them as his basis for demoting plaintiff.

29. In the spring 2022, while plaintiff was serving his probationary period, defendant Chief posed a racially tainted query of him concerning Andis Clippers which are used in African American barbershops.

30. After plaintiff responded to this inquiry, defendant Matturro asked Greer how long he got left until he planned to retire.

31. After plaintiff said a little over ten years, defendant Chief stated, "Well, I'm still going to be here every one of those years, so you better watch out."

32. Defendant Chief made this comment in an intimidating and hostile manner.

33. Defendants have never failed a single Caucasian during his/her probationary period for the rank of sergeant in nearly ten years since the plaintiff has been employed as a police officer in the Village of Scarsdale.

34. Caucasian police officers have engaged in serious misconduct during their probationary periods and been retained in rank, not terminated or demoted.

35. In 2016, for example, a probationary white police officer was involved in a "T-Bone" motor vehicle accident while on patrol in a police cruiser as he disregarded a traffic device (stop sign) due to operating a cell phone with the vehicle in motion.

36. The officer struck a female motorist injuring himself and the female party who was a resident of the Village of Scarsdale.

37. The police cruiser and the other vehicle involved were both heavily damaged and impounded.

38. The incident required an ambulance crew to be dispatched to the scene and hospital transport for both parties involved.

39. The white officer's probation was ultimately extended, but he was not terminated or failed.

40. In terms of training, discipline and lack of support, plaintiff received inferior treatment which compared with similarly situated Caucasian police officers.

41. Specifically, in 2018, as a police officer, plaintiff responded to a burglary alarm and performed a building check due to an unlocked door with another officer.

42. Upon completing the check, neither officer found any evidence of criminality and so reported the findings to the homeowner via the cell phone of a neighbor that was on scene.

43. The homeowner was out of state at the time of this incident and not available to respond to the residence to confirm officer findings and therefore advised that her home should be secured upon exit.

44. In fact, both plaintiff and his white colleague missed a window screen removed from a second-floor window due to poor lighting conditions respective to the time of day of the event (approx. 9pm), and a closed small "A" frame ladder resting against the home.

45. The homeowner returned to the residence from out of state the next day and reported a confirmed burglary after canvassing the residence.

46. Defendant Chief initiated an investigation of the incident which resulted in a write-up attached to plaintiff's annual evaluation.

47. On July 31, 2022, as sergeant and road supervisor, plaintiff learned of a residential burglary.

48. As it turned out, two days earlier, three Caucasian officers from the Village police department had responded to a prior burglary call at the same address and missed evidence of entry into an apparent broken second-floor window.

49. When plaintiff notified the captain of this "miss" by the three white officers, he stated that the officers were not at fault and they were not written up due to their inadequate canvass.

50. On July 22, 2022, defendant Matturro advised plaintiff that he was being demoted to patrol officer effective on or about August 9, 2022.

51. Defendant Matturro claimed the demotion stemmed from an investigation into baseless claims brought on by [a] PO Bell after plaintiff sought to curb her dereliction of duty and [b] a female dispatcher who misunderstood a conversation in which plaintiff was engaged and perpetuated her long-running feud with plaintiff by complaining about said comment.

52. No good faith investigation could have concluded that the plaintiff engaged in any form of misconduct in either case.

53. By dint of his demotion, plaintiff will suffer loss of salary and benefits, including pension.

54. By dint of this demotion, defendants humiliated plaintiff and caused him emotional stress and mental anguish which is continuing in nature.

55. By dint of his demotion, defendants have erected a substantial barrier to plaintiff's ability to advance in his chosen career.

56. Defendants intentionally demoted plaintiff on account of his race as [a] no neutral non-discriminatory reason exists for this adverse action, [b] they have

promoted few African Americans or any other people of color to ranked positions within its police department; [c] the defendant chief expressed hostility toward plaintiff's promotion from the date he advised plaintiff of that action and [d] has engaged in other personnel practices, as outlined herein, which are consistent with hostility toward the plaintiff as compared with similarly-situated Caucasians in the department.

## IV. **CAUSES OF ACTION**

57. Plaintiff incorporates pas. 1-56 as if fully repeated herein.

58. By intentionally discriminating against plaintiff in the terms and conditions of employment on the basis of his race as set forth above, defendants deprived him of the equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, as made enforceable against them through 42 U.S.C. section 1983.

59. By intentionally discriminating against plaintiff by demoting him on the basis of his race in late July 2022, defendants deprived him of equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, as made enforceable against them through 42 U.S.C. section 1983.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays that this Honorable Court accept jurisdiction over this matter; empanel a jury to hear and decide all issues within its

jurisdiction; award compensatory damages against both defendants to recompense plaintiff for lost wages and benefits including pension, and for emotional damages, pain and suffering, mental anguish, humiliation and embarrassment; award punitive damages against defendant Matturro for wanton acts of discrimination undertaken in bad faith under color of state law; reinstate plaintiff to the rank of Sergeant with restoration of his seniority; order defendants to institute sensitivity training for all members so as to enable them to accept direction and supervision from African Americans in leadership positions; award to plaintiffs the attorneys' fees and costs incurred in prosecuting this matter and enter any other order in the interests of law and justice.

Dated: August 25, 2022

Respectfully submitted,

MICHAEL H. SUSSMAN, ESQ. [3497]

SUSSMAN & ASSOCIATES – COUNSEL FOR PLAINTIFF
PO BOX 1005
GOSHEN, NY 10924
(845)-294-3991
Sussman1@sussman.law